UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YING QING LU, *et al.*,

    Plaintiffs,

        v.

MARK LEZELL, *et al.*,

    Defendants.

Civil Action No. 11-1815 (JEB)

## MEMORANDUM OPINION

"It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments." Durland v. United States, 161 U.S. 306, 313 (1896). So it was for Plaintiff Ying Qing Lu, who claims that Defendant Isam Ghosh bilked her out of $100,000 in 2003 and a quarter-million in 2005 with the promise of quick and outsized returns. Lu admits that she succumbed to the same temptation in 2008 in the transactions that precipitated this lawsuit. She alleges here that Ghosh and his co-Defendant, Mark Lezell, violated the Racketeering Influenced and Corrupt Organizations Act and several state laws by a lending scheme to convert her assets to their own use. Amendments to the Complaint have added new Plaintiffs, who also allege that Defendants' similar conduct victimized them. A default judgment having since been entered against Ghosh, Lezell moves here for summary judgment on multiple grounds. With all of the facts now on the record, the Court concludes that Lu's state-law claims are time barred but that the merits of the three Plaintiffs' RICO count are sufficient to proceed to trial.

**I.     Background**

The Court described the procedural history of this case in some detail in its prior Opinion. See Lu v. Lezell, 919 F. Supp. 2d 1, 2-3 (D.D.C. 2013). This time around, it need only recount the highlights, bearing in mind that the facts must be viewed in the light most favorable to Plaintiffs. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). Plaintiffs filed a Third Amended Complaint on October 31, 2012, alleging that Lu had been the victim of a scam encompassing five separate state-law violations and that Defendants had violated RICO in fraudulently obtaining money from her and three co-Plaintiffs. In particular, Plaintiffs point to four transactions that constitute the relevant acts for RICO purposes:

- In May 2008, Lu wired a total of $50,000 to an escrow account held by Lezell, an attorney assisting Ghosh in his transactions. The purpose of that deposit is not entirely clear from her papers, but she does aver that to date, Ghosh and Lezell have refused to return the money in violation of the terms of their agreement. See Mot., Att. 1 (Deposition of Ying Qing Lu) at 90, 191.

- Later that month, Lu agreed to lend Ghosh and one of his companies, Westin Development, LLC, another $50,000, with the expectation that she would receive $73,000 in return less than a month later. The $50,000 was placed into an escrow account held by Lezell. Although Lezell distributed an $8,000 partial payment to Lu on the appointed date, she never saw another penny. See id. at 72, 90-91, 141; Opp., Exh. A (Declaration of Isam Ghosh), ¶ 3.

- In June 2008, Ghosh received $50,000 from Plaintiff Afshin Afsharnia by way of Lezell's account, see Opp., Exh. B (Letter from Lezell to Mark Albanese, May 22, 2008). after Lezell had represented to Afsharnia that Ghosh would repay Afsharnia $70,000 one month later. Afsharnia was never compensated. See Mot., Att. 5 (Deposition of Afshin Afsharnia) at 64-65.

- In May 2011, Oklahoma Shelf Exploration and Development, LLC (OSED), sent $50,000 to Lezell to help finance another Ghosh project. Lezell received those funds in escrow before delivering them to Ghosh. OSED was never repaid. See Opp., Exh. C (Affidavit of Joseph Shane Jackson), ¶¶ 10, 14-15.

After neither Defendant responded to the Complaint, the Clerk entered default. See ECF No. 39. At Defendant Lezell's request, the Court vacated the default as to him only. See Minute

Order of Dec. 19, 2012.  (Ghosh never replied, so the entry of default stood as to him.)  The Court then proceeded to consider Lezell's Motion to Dismiss the Third Amended Complaint.

In doing so, on January 25, 2013, the Court dismissed the claim of Bridges Financial, another proposed plaintiff, with prejudice, citing *res judicata*, as the Court had already dismissed a similar claim Bridges had brought in a separate suit.  See Lu, 919 F. Supp. 2d at 4-5 (citing Bridges v. Lezell Law, PC, 842 F. Supp. 2d 261 (D.D.C. 2012)).  It also dismissed Lu's claims for breach of contract and breach of fiduciary duty as running afoul of the applicable statutes of limitations and for Lu's failure to allege all required elements of those causes of action.  See id. at 4-6.  Still standing after that decision were Lu's three state-law counts – alleging professional negligence, civil conspiracy, and fraud – and one count, which Lu brought on behalf of herself and the other Plaintiffs, alleging civil RICO violations.  On July 19 of that year, because Ghosh had still not defended the suit, the Court entered default judgment in the sum of $486,000 against him, which included treble damages.  See ECF No. 68 (Order of July 19, 2013).  Defendant Lezell has now filed a Motion for Summary Judgment asking the Court to reject the rest of the state-law claims as time barred and to find that Plaintiffs have not offered sufficient facts on the record that could support their RICO count.  On the state-law argument, the Court will oblige.  Plaintiffs, however, have done just enough for their RICO claim to survive.

## II.     Legal Standard

Before the Court can reach Defendant's Motion for Summary Judgment, it must address one procedural issue that will directly affect the analysis.  Plaintiffs have asked for leave to file a Sur-Reply to Defendant's Motion.  The decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the Court.  See Am. Forest & Paper Ass'n, Inc. v. EPA, 1996 WL 509601, at *3 (D.D.C. Sept. 4, 1996).  If the movant raises arguments for the first time

in his reply to the non-movant's opposition, the Court may either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply. Ben–Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003); Natural Res. Def. Council, Inc. v. EPA, 25 F.3d 1063, 1071-72 n.4 (D.C. Cir. 1994). Plaintiffs correctly point out that Defendant raised at least one new issue in his Reply: whether Plaintiffs' Opposition satisfied the requirements of Federal Rule of Civil Procedure 56(c) and Local Rule 7(h). That question bears directly on the Court's summary-judgment analysis, and, as a result, it will grant Plaintiffs' Motion and will consider their Sur-Reply.

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Liberty Lobby, 477 U.S. at 247-48; Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.

When a motion for summary judgment is under consideration, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). Indeed, on a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations. See Fed. R. Civ.

P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" such as affidavits, declarations, or other evidence. Fed. R. Civ. P. 56(c)(1).

In light of this requirement, and pursuant to Local Rule 7(h) and Federal Rule 56(c), the Court, in resolving summary-judgment motions, "assumes that facts identified by the moving party in the statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h). These rules "assist[] the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively." Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 150 (D.C. Cir. 1996). "Requiring strict compliance with the . . . rule[s] is justified both by the nature of summary judgment and by the rule[s'] purposes . . . . The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record." Id. at 150-51 (quoting Gardels v. CIA, 637 F.2d 770, 773 (D.C. Cir. 1980)).

Defendant argues that Plaintiffs have failed to comply with this requirement, as their Statement of Material Facts Remaining in Genuine Dispute is inadequate. He is, for the most part, correct. Called on to answer Lezell's detailed, 47-paragraph statement of facts, Plaintiffs have filed only the most cursory of responses. Their joint statement includes just four paragraphs, and their rebuttal to Defendant's filing amounts to two vague statements. To wit, the two "facts" that Plaintiffs claim remain in dispute are "[w]hether the forty-six (46) [*sic*] facts stated by Defendant Lezell as not being in dispute, are really not in dispute" and "[w]hether the facts asserted via affidavit by Shane Jackson, outweigh the facts submitted by Defendant Lezell

5

in his affidavit." See Pl. SMF, ¶¶ 1, 4. As "Plaintiff[s] fail[] to cite specific record support for a number of assertions included in [their] Statement" and "the numbered paragraphs in Plaintiffs' Statement bear no relationship at all to the numbered paragraphs in Defendant's Statement," the Court will deem most of Defendant's facts admitted. See Valles-Hall v. Ctr. for Nonprofit Advancement, 481 F. Supp. 2d 118, 123-24 (D.D.C. 2007). In addition, the Court cannot credit – even at the summary-judgment stage – Plaintiffs' bald assertions about any incidents not specifically pled and supported with record evidence, such as the twenty additional alleged RICO violations mentioned without citation in Plaintiffs' Statement of Material Facts, see Pl. SMF, ¶ 2, or the two additional incidents of fraud that Plaintiffs assert are the subject of lawsuits in other jurisdictions but that are not supported with record evidence here. See Opp. at 3-4.

Plaintiffs have, however, done just enough to place one set of important facts in dispute: whether Lezell held funds in escrow for some or all of the RICO-predicate transactions. Although Plaintiffs' Statement of Material Facts is manifestly unhelpful on this point, they have pointed the Court to two pieces of record evidence to support their claim: a "2008 letter prepared by Lezell . . . referencing Lezell's holding funds in 'escrow,'" see Opp. at 7-8 (citing May 22, 2008, Letter from Lezell to Albanese); and the Affidavit of Shane Jackson, a member of OSED, which claims that Lezell was meant to act as "Escrow agent" and would "reimburse" OSED the full $50,000 if the deal went south. See Jackson Aff., ¶ 9. To be sure, these citations are buried in Plaintiffs' briefs and not in their statement of facts, but they are specific enough that the Court is not left to "sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact." Jackson, 101 F.3d at 150 (quoting Twist v. Meese, 854 F.2d 1421, 1425 (D.C. Cir. 1988)). As a result, it will take these facts in the light most favorable to Plaintiff.

Notwithstanding that conclusion, the Court notes that this is not the first time Plaintiffs' attorney has failed to comply with the Court's rules and orders. See, e.g., Minute Order of March 4, 2013 (sanctioning counsel for failing to appear at scheduling conference and to follow other Court requirements); Minute Order of August 20, 2013 (sanctioning counsel for failing to appear at deposition). In light of this history, the Court expects full compliance moving forward. On, now, to the merits.

## III. Analysis

As noted, Lezell moves for summary judgment on each of Plaintiffs' remaining counts. He contends both that Lu's state-law causes of action for professional negligence, civil conspiracy, and fraud are time barred and that all Plaintiffs' civil RICO count fails on the merits. Plaintiffs' argument in response often ventures into the nonsensical or the misplaced, but they do include one or two RICO arguments that hit their mark. As a result, the Court will grant Defendant's Motion with respect to the state-law claims, but not as to RICO.

### A. State-Law Claims

In the District of Columbia, the statute of limitations for professional negligence, fraud, and civil conspiracy is three years, and pursuant to the District's "discovery rule," it begins to run at the time the right to maintain the cause of action accrues. See D.C. Code, § 12-301(8); De May v. Moore & Bruce, LLP, 584 F. Supp. 2d 170, 180 (D.D.C. 2008) (legal malpractice); C&E Servs., Inc. v. Ashland, Inc., 498 F. Supp. 2d 242, 261 (D.D.C. 2007) (fraud and intentional misrepresentation); Curtis v. Lanier, 535 F. Supp. 2d 89, 95 (D.D.C. 2008) (civil conspiracy). In other words, the statute of limitations begins to run as soon as the plaintiff knows or should have known of an injury, its cause, and some evidence of wrongdoing. See De May, 584 F. Supp. 2d at 180.

The first question the Court must answer is to whom the state-law claims refer. Although it is difficult to make out what, exactly, each Plaintiff alleges in the Third Amended Complaint, several factors convince the Court that Lu is the sole Plaintiff bringing the state-law claims, and thus the statute-of-limitations analysis need not account for the other Plaintiffs.

First, the incidents underlying all of the state-law claims appear to relate only to Lezell's alleged failure to return certain escrow deposits to Lu, not to the other Plaintiffs. See Third Am. Compl., ¶¶ 66-68. Lu made these deposits in her individual capacity, and they were owed back to her alone. See, e.g., id., ¶ 28 (referring to the $50,000 in question as "Lu's funds"). The only mention of transactions involving the other Plaintiffs in the state-law context, in paragraph 12 of the Third Amended Complaint, alleges a scheme that was "related" for RICO purposes, and not one that appears to give rise to a request for damages in the state-law counts. The fact that the other Plaintiffs "re-allege[d]" each of Lu's claims "as if fully pled" in the Third Amended Complaint, see Opp. at 5 (citing Third Am. Compl., ¶¶ 54, 65, 69, 72, 75, 79), cannot save Plaintiffs here, as the facts and claims that were re-alleged were specific to Lu. Lu's own deposition testimony, moreover, bears this out. See Third Am. Compl., Att. 1 (Deposition of Yu Qing Lu), at 138-139, 151-152, 155 (confirming that Lu is the "Plaintiff mentioned in the state-law causes of action").

Second, these incidents were pled only by Lu in the original Complaint – neither other Plaintiff was even a party to the suit at that time – and they have remained virtually (and, in most places, literally) identical in the Third Amended Complaint. Compare Compl., ¶¶ 43-44 with Third Am. Compl., ¶¶ 70-71 (civil conspiracy); Compl., ¶¶ 49-51 with Third Am. Compl., ¶¶ 76-78 (negligence); Compl., ¶¶ 53-57 with Third Am. Compl., ¶¶ 80-84 (fraud/intentional misrepresentation).

And finally, Afsharnia and OSED are mentioned by name in the Third Amended Complaint's RICO section, and facts are pled that relate specifically to them. The principle of meaningful variation thus suggests that the sections that do not mention those Plaintiffs do not apply to them.

With that preliminary issue decided, the Court turns now to the limitations chronology. Lu filed her initial Complaint in this case on October 13, 2011. Any action accruing before October 13, 2008, therefore, is time barred. The record unequivocally demonstrates that Lu knew or should have known that something was amiss no later than June 13, 2008. It was by that date that she was supposed to be paid the full sum of $73,000 owed to her. Instead, Ghosh and Lezell by then had only sent her an $8,000, contractually required partial payment. Lu clearly must have been aware of this default in June 2008. And, indeed, it appears that she was, as she acted immediately on the shortfall, contacting Lezell "within days" to inquire about her "escrow money." See Lu Depo. at 73. In addition, she was not the victim of a lack of legal knowledge, as she had representation throughout May and June of 2008. See id. at 115-16.

Nor does Lu argue that she could not have reasonably discovered the claim in May or June of 2008. In fact, her Opposition specifically allows that she filed her Complaint "about 39 months (or, 3 years, 3 months) after [she] could possibly know of the injury and its cause." Opp. at 6. That concession alone is dispositive. She says nothing, furthermore, to suggest that imputing such knowledge to her would be unreasonable, instead invoking on one half of one line "other equitable tolling principles." Opp. at 6. She elaborates on these other principles in the Sur-Reply, arguing that Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143 (1987), stands for "the proposition that where a class action is filed, the statute of limitations is tolled." Sur-Reply at 7 (internal quotation marks omitted). Of course, the Court is not aware of any class

9

action relating to the incidents Lu alleges, and, in any case, Malley-Duff says no such thing. In that case, the Supreme Court ruled that a standardized, federal, four-year statute of limitations would apply to RICO civil-enforcement actions. It does not address the statute of limitations for state-law causes of action brought alongside federal RICO claims, and it does not – as far as the Court can tell – mention any equitable tolling principles.

As a result, the Court will grant Defendant's Motion with respect to Lu's state-law claims.

### B. RICO

This brings the Court to the main event: Plaintiffs' allegation that Lezell and Ghosh conspired in violation of the Racketeering Influenced and Corrupt Organizations Act. The RICO-conspiracy statute makes it illegal to conspire to violate the substantive provisions of the law, which, in turn, provide that it is unlawful for anyone "employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c), (d); see also United States v. Eiland, 738 F.3d 338, 360 (D.C. Cir. 2013). To prove a RICO conspiracy, then, Plaintiffs must show that Lezell participated in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). Lezell argues both that he did not participate in the conduct of any enterprise that may have violated RICO and that Plaintiffs have not proven a sufficient pattern of racketeering activity. The Court will address each argument in sequence.

#### 1. *Participation in Conduct of RICO Enterprise*

Even where a defendant's actions constitute a pattern of criminal activity, he cannot be liable under RICO unless he satisfies the first two Sedima elements. In other words, Plaintiffs

must show that Defendant is "employed by or associated with" an alleged criminal enterprise and "participate[s], directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c)). Lezell argues that because he "was not a member or owner of, officer of, director of, or employee of Westin Development, LLC, and Geneva Financial Consultants, LLC" – Ghosh's companies alleged to have been involved in the plot – he was not "employed by or associated with" the alleged criminal enterprise and cannot be liable for its actions. Mot. at 36. In addition, the Court must address whether Defendant was part of an "enterprise." 18 U.S.C. § 1962(c).

Like the rest of RICO, the "participation" and "conduct" requirements have received attention that is somewhat schizophrenic. It is clear that it is not enough for a defendant to "carry on" or "participate in" an enterprise's affairs through a pattern of racketeering activity; instead, there must be evidence that he "ha[d] some part in directing [the enterprise's] affairs" by "participating in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 176-79 (1993) (emphasis added). This means at least that the alleged participant must have been "in cahoots" with those perpetrating the fraud, and "proffer[ing] advice" or "assum[ing] any directive role" is assumed to be enough. See Grant Thornton, LLP v. Office of Comptroller of the Currency, 514 F.3d 1328, 1333 (D.C. Cir. 2008). Knowingly implementing criminal decisions or exercising broad discretion also suffices, see Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 165 (2001), though persuading associates to commit acts of racketeering and merely aiding those acts unwittingly do not. See Vickers Stock Research Corp. v. Quotron Sys., 1997 U.S. Dist. LEXIS 10837, at *9-10 (S.D.N.Y.); First City Nat. Bank & Trust Co. v. Fed. Deposit Ins. Co., 730 F. Supp. 501, 509 (E.D.N.Y. 1990). In short, this is an issue on which the courts have been, in former Chief Judge Mikva's words, "all over the lot."

11

Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639, 913 F.2d 948, 957 (D.C. Cir. 1990) (Mikva, J., concurring).

Lezell seizes on that haziness to argue that as a mere middleman he played no such leading role. This reading of the statute and case law, however, proves too restrictive. Although Plaintiffs' arguments leave much to the reader's imagination, the Court has determined that they have offered enough to show that Lezell implemented criminal decisions, see Cedric Kushner, 533 U.S. at 163, in that he received funds from Plaintiffs and improperly distributed them to Ghosh on at least three occasions. It concludes, moreover, that there is some evidence to suggest that he took a "directive role" in fraudulently inducing Plaintiffs to wire those funds. See Grant Thornton, 514 F.3d at 1333; Lu Depo. at 177; May 22, 2008, letter from Lezell to Albanese. And finally, Lezell did this knowingly, as the agreements between Ghosh and Plaintiffs that he facilitated provided for the return of funds to Plaintiffs after a certain date. See Cedric Kushner, 533 U.S. at 163; Opp., Exh. C (Lu Promissory Note) at 1-2; May 22, 2008, Letter from Lezell to Albanese. An inference that Lezell knew that it was improper to send the funds to Ghosh instead is warranted. To be sure, Lezell has offered some competing evidence to rebut the conclusion that it was wrong for him to send the funds to Ghosh, see, e.g., Afsharnia Depo. at 51, 54 (allowing that Lezell was to send Afsharnia's funds to Ghosh in manner of typical commercial loan), and that he committed fraud at all. See, e.g., Mot., Att. 11 (Deposition of Mark Lezell) at 284 (disclaiming any decision-making role). That, however, is a matter for the finder of fact, not for this Court on summary judgment.

These facts, taken in the light most favorable to Plaintiffs, are sufficient to satisfy RICO's "conduct" requirement. By prompting Plaintiffs to contribute funds to Ghosh's enterprises –

whether via a formal escrow agreement or not – and then facilitating the theft of that money, Lezell plainly and knowingly participated in the management of the fraudulent enterprise.

Plaintiffs also argue at length that Lezell and Ghosh constitute an "enterprise" separate from the "persons" and the "pattern" that make it up – an important RICO requirement, see Boyle v. United States, 556 U.S. 938, 948-49 (2009) – but Defendant has not contested this point. And for good reason, as Plaintiffs have the better of that argument as well. See id. (citing United States v. Turkette, 452 U.S. 576 (1981)) (An association-in-fact enterprise – the type of enterprise Plaintiffs allege in this case, see Third Am. Compl., ¶ 17 – is a concept with considerable "breadth" that simply describes "a continuing unit that functions with a common purpose."); see also Eiland, 738 F.3d at 360 (quoting Boyle, 556 U.S. at 951) ("[P]roof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise.").

### 2. *Pattern of Racketeering Activity*

Lezell next argues that Plaintiffs have not proven that the disputed transactions amount to a "pattern of racketeering activity." To show that such a pattern exists, RICO requires at least two predicate criminal racketeering acts over a ten-year period. See 18 U.S.C. § 1961(5). This does not necessarily demand proof of, for example, loansharking or extortion. Instead, the statute merely requires "acts punishable under certain state and federal criminal laws, including mail and wire fraud." Western Associates Ltd. Partnership ex rel. Ave. Associates Ltd. v. Market Square Associates, 235 F.3d 629, 633 (D.C. Cir. 2001) (citing 18 U.S.C. § 1961(1)(B)).

The Supreme Court has further required that these predicate acts show elements of "relatedness" and "continuity." H.J. Inc. v. Northwestern Bell Telephone Company, 492 U.S. 229, 239 (1989). In other words, a plaintiff must show "that the racketeering predicates are

13

related, and that they amount to[,] or pose a threat of[,] continued criminal activity." Id. (emphasis omitted). Although relatedness and continuity have become the *sine qua non* of a RICO case, the D.C. Circuit "continues to endorse a case-by-case, fact-specific approach" that is "fluid, flexible, and commonsensical, rather than rigid or formulaic." Western Assocs., 235 F.3d at 637. This approach to the pattern requirement "helps to prevent ordinary business disputes from becoming viable RICO claims." Id. If, instead, the courts were to recognize a RICO claim based on simple business fraud, "the pattern requirement would be rendered meaningless." Id.

Defendant makes much of the supposed differences between the underlying acts alleged here in an effort to convince the Court that they are not "related" for RICO purposes. The relatedness requirement, however, is "not a cumbersome one for a RICO plaintiff." Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44 (1st Cir. 1991). As long as the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events," this element is satisfied. H.J. Inc., 492 U.S. at 240 (internal quotation marks omitted). These criteria, moreover, have been generously construed. As the Third Circuit found in Banks v. Wolk, 918 F.2d 418 (3d Cir. 1990), the "same or similar purposes," for example, can be as generic as the desire to "defraud[] those who deal[] with" the enterprise; the "results" may be no more than to have achieved that objective; the "participants" need not be the same over the course of the scheme; the "victims" may be related to one another only in the sense that "they all were engaged in business dealings with [and were defrauded by] the [defendants] through [the enterprise]"; and the "methods of commission" may be similar only by virtue of the fact that they constitute fraud. Id. at 422-25. Plaintiffs provide evidence for at least that much here, and, as a result, they satisfy RICO's "relatedness" requirement.

14

Plaintiffs will thus prevail on summary judgment if they can show that the scheme alleged had the required continuity. "Continuity" in this context refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1264 (D.C. Cir. 1995) (quoting H.J. Inc., 492 U.S. at 241). As the Court finds that Plaintiffs have presented evidence sufficient to support a claim of closed-ended continuity, it need not address the open-ended-continuity question.

In determining whether or not a closed-period pattern is established, courts consider several factors: "[T]he number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." Edmondson & Gallagher, 48 F.3d at 1265 (quoting Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1411-12 (3d Cir. 1991)). "[I]n some cases 'some factors will weigh so strongly in one direction as to be dispositive [in favor of RICO liability].'" Western Assocs., 235 F.3d at 634 (quoting Edmondson & Gallagher, 48 F.3d at 1265). At the same time, RICO was not "aimed at the isolated offender," Sedima, 473 U.S. at 496 n.14 (quoting 116 Cong. Rec. 35, 193 (1970) (statement of Rep. Poff)), but was instead intended to limit RICO "to those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes." Lipin Enterprises v. Lee, 803 F.2d 322, 324 (7th Cir.1986); see also H.J. Inc., 492 U.S. at 242 ("Congress was concerned in RICO with long-term criminal conduct."). As a result, "if a plaintiff alleges only a single scheme, a single injury, and few victims it is 'virtually impossible for plaintiffs to state a RICO claim.'" Western Assocs., 235 F.3d at 634 (quoting Edmondson & Gallagher, 48 F.3d at 1265));

15

see also Menasco, 886 F.2d at 684 (declining to extend RICO liability where defendants' actions were "narrowly directed towards a single fraudulent goal" and "involved a limited purpose").

In Edmondson & Gallagher, for example, the D.C. Circuit rejected a RICO claim premised on allegations of "a single scheme" with a single set of goals – namely, the Association's attempt to prevent or delay the sale of its building or to extract a "ransom" for allowing the sale to proceed. See 48 F.3d at 1265. The court found it significant, moreover, that the scheme "entail[ed] but a single discrete injury, the loss of the sale (or payment of the ransom), suffered by a small number of victims." Id.; see also Western Assocs., 235 F.3d at 634-35 (finding no pattern where defendants sought to diminish value of partnership interest in single property, only injury was lost value in property, and there was only single victim); E. Sav. Bank, FSB v. Papageorge, No. 13-1147, 2014 WL 910357, at *5 (D.D.C. Mar. 10, 2014) (rejecting RICO claim because "plaintiff has only alleged that the defendants engaged in acts designed to" achieve a "single discrete goal": "obtain[ing] control of the Property from the plaintiff at a low price"). Nor does RICO apply merely because a single, narrow, fraudulent scheme affects numerous plaintiffs. See Lopez v. Council on American–Islamic Relations Action Network, Inc., 657 F. Supp. 2d 104, 115-16 (D.D.C. 2009) (denying RICO claim where defendant misrepresented his bar status on numerous occasions, but as part of one scheme to fraudulently induce clients to retain him).

At the same time, the Supreme Court has declined to read "an organized crime limitation into RICO's pattern concept," H.J. Inc., 492 U.S. at 244, instead opting to interpret the statute perhaps more broadly than Congress expressly intended. See National Organization for Women, 510 U.S. 249, 262 (1994) ("[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.") (quoting

see also Menasco, 886 F.2d at 684 (declining to extend RICO liability where defendants' actions were "narrowly directed towards a single fraudulent goal" and "involved a limited purpose").

In Edmondson & Gallagher, for example, the D.C. Circuit rejected a RICO claim premised on allegations of "a single scheme" with a single set of goals – namely, the Association's attempt to prevent or delay the sale of its building or to extract a "ransom" for allowing the sale to proceed. See 48 F.3d at 1265. The court found it significant, moreover, that the scheme "entail[ed] but a single discrete injury, the loss of the sale (or payment of the ransom), suffered by a small number of victims." Id.; see also Western Assocs., 235 F.3d at 634-35 (finding no pattern where defendants sought to diminish value of partnership interest in single property, only injury was lost value in property, and there was only single victim); E. Sav. Bank, FSB v. Papageorge, No. 13-1147, 2014 WL 910357, at *5 (D.D.C. Mar. 10, 2014) (rejecting RICO claim because "plaintiff has only alleged that the defendants engaged in acts designed to" achieve a "single discrete goal": "obtain[ing] control of the Property from the plaintiff at a low price"). Nor does RICO apply merely because a single, narrow, fraudulent scheme affects numerous plaintiffs. See Lopez v. Council on American–Islamic Relations Action Network, Inc., 657 F. Supp. 2d 104, 115-16 (D.D.C. 2009) (denying RICO claim where defendant misrepresented his bar status on numerous occasions, but as part of one scheme to fraudulently induce clients to retain him).

At the same time, the Supreme Court has declined to read "an organized crime limitation into RICO's pattern concept," H.J. Inc., 492 U.S. at 244, instead opting to interpret the statute perhaps more broadly than Congress expressly intended. See National Organization for Women, 510 U.S. 249, 262 (1994) ("[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.") (quoting

Sedima, 437 U.S. at 499); see also Annulli v. Panikkar, 200 F.3d 189, 199 (3d Cir. 1999) (because RICO statute is to be read broadly, RICO "may be applicable to many garden-variety fraud cases") (internal quotation marks omitted). This has led some courts to allow that a pattern of racketeering activity may exist where "similar actions [were] taken by the defendants against . . . other [similarly situated plaintiffs]." Busby v. Capital One, N.A., 772 F. Supp. 2d 268, 282 (D.D.C. 2011) (citing Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041, 1051 (7th Cir. 1998), which concluded that plaintiff had adequately pled pattern "by referencing his own experiences with [defendant] . . . and alleging in some detail that other residents and their relatives also were victimized by the identical scheme").

Where, then, does the present case fall? The courts' vigilance appears to be directed at cases in which "[i]t is only because of the way in which the [scheme was carried out] that an event obviously not constituting a pattern can be distorted into one." Roeder v. Alpha Indus., Inc., 814 F.2d 22, 31 (1st Cir. 1987) (finding no RICO liability where one bribe aiming to obtain contracts related to one government program was divided into three payments and was discussed in several phone calls and letters); see also Western Assocs., 235 F.3d 637 ("RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it. This caution stems from the fact that [i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice.").

This case does not present that risk. To be sure, Lezell may not represent the Sopranos-esque figure that RICO's framers contemplated. Nonetheless, the dispute here addresses more than "a single scheme [and] a single injury [with] few victims." Western Assocs., 235 F.3d at 634 (quoting Edmondson & Gallagher, 48 F.3d at 1265). Taking the facts as Plaintiffs present

17

them, Lezell and Ghosh participated in a scheme to induce several different potential victims to agree to a loan-type agreement (though the agreement would often resemble something less formal than the typical commercial loan). Lezell would provide wire instructions to each victim and instruct the victim how to make a cash deposit (whether in an escrow account or another holding account). Finally, rather than hold the deposit per the typical escrow agreement (written or oral, formal or informal), Lezell would then transfer the money to Ghosh, who would apparently convert it to his own use.

Those facts distinguish this scheme from those presented in the cited cases: unlike the defendants in Edmondson, Lezell and Ghosh did not have only one objective, such as preventing the sale of a particular asset. Indeed, the scheme is not alleged to have had a particular goal at all other than to net illicit gains. Nor was it carried out by a single perpetrator or against a single victim, like the schemes in Lopez or Papageorge. And finally, this is not a case in which the copious use of communications technology has allowed Plaintiffs to convert ordinary mail or wire fraud into a RICO claim. Whereas in Lopez, the court found that even 17 instances of mail and wire fraud could not support a RICO claim where they were all carried out in service of a single goal, Lezell and Ghosh employed those methods to defraud three separate Plaintiffs on three distinct occasions in three different ways. Viewed in that light, the scheme alleged here, taken in the light most favorable to Plaintiffs, constitutes a civil RICO violation. See Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals, 873 F. Supp. 2d 288, 312-13 (D.D.C. 2012) (allowing RICO claim to proceed where defendants employed two methods of fraud to achieve several discrete goals); Corley, 142 F.3d 1041 (allowing RICO plaintiffs to go forward where they made reference to other similarly situated but unrelated victims). It is thus up to a jury to weigh the facts and ultimately to decide whether they support that conclusion.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment with respect to Lu's state-law claims, but it will deny the Motion on the RICO count. A separate Order to that effect will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: May 27, 2014